Matthew T. Christensen
ANGSTMAN JOHNSON
3649 N. Lakeharbor Lane
Boise, Idaho  83703
Telephone: (208) 384-8588
Facsimile:  (208) 853-0117
Christensen ISB: 7213

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEANNE B. BRYANT, solely in her capacity as court-appointed Independent Fiduciary for RETIREMENT SECURITY PLAN AND TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES W. FLETCHER, III, an Individual,<br><br>Defendant. | Case No.<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

The Plaintiff, Jeanne B. Bryant, solely in her capacity as court-appointed Independent Fiduciary for Retirement Security Plan and Trust, by and through her counsel of record, ANGSTMAN JOHNSON, and for cause of action against James W. Fletcher, III, states as follows:

COMPLAINT – PAGE 1
A♦J; Matter: 8571-014

## PARTIES, JURISDICTION, AND VENUE

1.      The Plaintiff, Jeanne B. Bryant ("Bryant"), is the current court-appointed Independent Fiduciary for Retirement Security Plan and Trust ("RSPT").  Ms. Bryant is a citizen of Tennessee.

2.      RSPT is a trust comprised of a collection of retirement plans, organized and under Bryant's fiduciary authority.

3.      Defendant James W. Fletcher, III ("Fletcher"), is a citizen of Virginia.

4.      At all times relevant hereto, Fletcher contracted with RSPT in Boise, Idaho.

5.      The value of the claims at issue is in excess of $75,000.00.

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000.00 and is between an individual residing in Virginia and an ERISA plan fiduciary located in Tennessee (Bryant), who is acting under the control and supervision of this Court.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the claims occurred in this judicial district and the parties consented to venue in this judicial district.

## FACTUAL BACKGROUND

8.      Prior to 2012, Matthew Hutcheson was a Trustee and fiduciary of RSPT, with some control over the RSPT assets.

9.      In December 2010, Hutcheson caused RSPT to transfer funds to an entity owned and managed by Hutcheson – Green Valley Holdings, LLC ("GVH").   The total funds transferred from RSPT to GVH by Hutcheson was Three Million Two Hundred Seventy-Six Thousand Dollars ($3,276,000.00).

COMPLAINT – PAGE 2
A♦J; Matter: 8571-014

10.     GVH used the funds from RSPT to purchase certain Loan Documents (including a Promissory Note and Mortgage) from Pacific Continental Bank.  The Loan Documents included a Mortgage to secure a promissory note.  The Mortgage encumbered the Osprey Meadows Golf Course as Tamarack Resort in Donnelly, Idaho.

11.     GVH provided a Promissory Note from GVH to RSPT (hereinafter the "RSPT Note"), and secured the Note with a pledge of all of its assets, including the Loan Documents.

12.     GVH later also pledged the Loan Documents to Fletcher, in return for a loan to GVH from Fletcher.  After GVH defaulted on the loan from Fletcher, Fletcher obtained actual possession of the Loan Documents, including the original Promissory Note and Mortgage.

13.     RSPT and Fletcher previously agreed on a compromise, by which Fletcher provided the original Loan Documents to RSPT.  Both parties contemplated, under the terms of the original agreement, a relatively quick sale of the golf course assets.

14.     A true and correct copy of the original agreement between RSPT and Fletcher is attached hereto as ***Exhibit A***.

15.     After receiving the original documents from Fletcher, RSPT began foreclosure proceedings on the golf course property, in order to market it as an asset and realize a return of the funds stolen by Hutcheson.

16.     Due to several delays in the foreclosure process, it became necessary to pay back-owed property taxes on the golf course property and other maintenance expenses.  Between 2013 and 2016, RSPT paid all required taxes and maintenance costs for the golf course.

17.     In 2016, after no real interest had been shown in purchasing the golf course assets prior to a foreclosure sale, RSPT conducted the sale.  Prior to conducting the sale, RSPT communicated with Fletcher regarding the lack of interest.  Since RSPT had expended all the

COMPLAINT – PAGE 3
A♦J; Matter: 8571-014

efforts to that date on both maintaining and marketing the property, RSPT sought a renegotiation of the agreement with Fletcher.

18.     The renegotiations were all done via email.  Ultimately a new agreement was made, which Fletcher consented to.

19.     Attached as ***Exhibit B*** is a copy of the email string describing the new agreement with Fletcher, and containing Fletcher's consent to the new agreement.

20.     Pursuant to the new Agreement, Fletcher was required to pay the taxes due in 2017 in order to forestall a Sheriff's sale of the property for past-due taxes.  In reliance on the Agreement, Fletcher paid those taxes.

21.     Additionally, in reliance on the new Agreement, RSPT continued to market and sell the property.  In 2017, RSPT received several offers for the golf course property – offers which were much lower than the parties originally anticipated.

22.     Ultimately, after the statutory redemption period ran, the property was sold, and RSPT received a net amount of $1,196,408.67.

23.     Due to disputes regarding the terms of the new Agreement, RSPT now seeks a judicial declaration of amounts owed to Fletcher.

## CLAIM ONE – EQUITABLE RELIEF

24.     Bryant realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

25.     Pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration."

26.     Fletcher appears to take the position that there was no "new Agreement", but that the parties are bound by the previously signed agreement.  RSPT, on the other hand, argues that the new Agreement superseded the previous agreement and is now the operative agreement dictating amounts owed to the parties.

27.     Both parties acted in reliance on the terms of the new Agreement after it was made.

28.     Bryant seeks, and is entitled to, a declaration from the court regarding the effective and operative terms of the agreement between the parties, and declaring the amount owed to Fletcher under the agreement.

## CLAIM TWO – ATTORNEY FEES AND COSTS

29.     Bryant realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

30.     Bryant has been required to retain the services of ANGSTMAN JOHNSON to prosecute this matter on her behalf, and Bryant is entitled to reasonable attorney's fees for prosecution of this action, pursuant to applicable law, including, but not limited to, Idaho Code §§ 12-120(3) and 12-121, the parties agreement and Rule 54 of the Federal Rules of Civil Procedure.

## RESERVATION OF CLAIMS

Bryant has completed her initial investigation in this matter, but has not yet undertaken discovery. Bryant therefore expressly reserves her right, and give the Defendant notice, that Bryant may amend her complaint to state all other necessary claims and causes of action that come to light during the course of discovery in this matter.  Bryant also specifically reserves the

right to amend this Complaint to assert a claim for punitive damages, should discovery reveal facts or information that supports such a claim.

## JURY DEMAND

Bryant hereby demands a trial by jury on all issues and claims in this matter.

## PRAYER FOR RELIEF

WHEREFORE, Bryant prays for judgment from the Court against Colonial as follows:

1.    **Claim One (Equitable Relief).**    For a declaratory judgment that the new Agreement governs the payouts owed to the parties, and determining the amount owed to Fletcher.

2.    **Claim Two (Attorney's Fees and Costs).**    For a judgment for Bryant's reasonable attorney's fees incurred herein in such sum as the Court deems just and reasonable.  In the event of default judgment entered against Fletcher, Bryant requests an award of attorney's fees in the amount of $5,000.00.

3.    For a judgment for all costs incurred herein.

4.    For such other and further relief as the Court deems just and equitable in the circumstances.

DATED this 29th day of January, 2018.

_____
                        /s/ Matt Christensen
MATTHEW T. CHRISTENSEN
Attorney for Plaintiff

COMPLAINT – PAGE 6
A♦J; Matter: 8571-014

# EXHIBIT A

<u>**Agreement and Assignment of Sale Proceeds**</u>

      **THIS AGREEMENT AND ASSIGNMENT OF SALE PROCEEDS** ("Assignment"), is entered into this ___ day of November, 2012, between **RETIREMENT SECURITY PLAN AND TRUST ("RSPT")** and **JAMES W. FLETCHER, III ("FLETCHER")**, an individual.

<u>**WITNESSETH:**</u>

      **WHEREAS,** certain disputes have arisen between RSPT and Fletcher regarding loans provided to Matthew Hutcheson ("Hutcheson") and/or Green Valley Holdings, LLC ("GVH");

      **WHEREAS,** RSPT and Fletcher both claim a security interest in a Promissory Note and Deed of Trust previously owned by Pacific Continental Bank (the "PCB Loan Documents"). The PCB Loan Documents are attached hereto as Exhibits A and B, respectively;

      **WHEREAS,** Jeanne Bryant (the independent fiduciary for RSPT) has explored options to recover the PCB Loan Documents from Fletcher and possesses potential claims against Fletcher on behalf of RSPT; and

      **WHEREAS,** Fletcher disputes the claims asserted by Bryant (on behalf of RSPT), and contends that he is the rightful pledgee of the PCB Loan Documents.

      **NOW, THEREFORE,** in settlement of Bryant's claims and recognition of Fletcher's potential defenses to those claims, and in order to effect the orderly liquidation of the PCB Loan Documents (including foreclosure and sale of the assets securing the PCB loan), Bryant (on behalf of RSPT) and Fletcher have agreed as follows:

1. **Agreement.**

   a. Upon this agreement becoming effective (including any contingencies described herein), Fletcher will forthwith transfer the original PCB Loan Documents to Bryant (or her designee).

   b. Upon receiving the original PCB Loan Documents from Fletcher, Bryant (on behalf of RSPT) will take all steps necessary to receive full right and title to the PCB Loan Documents from GVH, including, but not limited to, pursuing a claim against GVH (if necessary) to foreclose on the PCB Loan Documents.

   c. Fletcher shall be entitled to acceptable title insurance reflecting perfection of RSPT's assignment as described herein, provided by RSPT at its expense.

   d. Upon recovering the PCB Loan Documents, RSPT will initiate and complete judicial foreclosure proceedings of the Real Property secured by the PCB Loan Documents, thereby receiving title to the Tamarack Resort Osprey Meadows golf course and certain portions of the Osprey Meadows Lodge (subject only to Fletcher's claim in the proceeds (described further below) and any right of redemption that may exist under Idaho law after the foreclosure sale). In the event a successful money bid is received at the sheriff's sale in the judicial foreclosure proceedings, the funds received from the Sheriff's sale will be distributed as described herein.

e. As soon as possible after the foreclosure proceedings (including the termination of any redemption period, and assuming RSPT acquires the Real Property with a credit bid), RSPT shall market and sell the Real Property. During the redemption period, Fletcher shall be provided notice of any actions taken to market the Real Property. After the redemption period has run, Fletcher shall be provided a quarterly report of any actions taken to market the Real Property.

f. RSPT will, and by this Agreement does, grant Fletcher an assignment of the Net Proceeds of the PCB Loan Documents in the initial principal amount of $700,000.00.

g. RSPT shall then be entitled to Net Proceeds of the PCB Loan Documents in the amount of $4,000,000.00, which shall be paid after the initial $700,000.00 Net Proceeds payment to Fletcher.

h. After paying the initial $700,000.00 of Net Proceeds to Fletcher, and the next $4,000,000.00 in Net Proceeds to RSPT, Fletcher shall be entitled to all Net Proceeds in excess of $4,700,000.00.

i. These assignments of Net Proceeds to Fletcher shall be evidenced by the filing of a UCC Financing Statement with the Idaho Secretary of State. This UCC Financing Statement shall be prepared and filed by Bryant.

j. The term "Net Proceeds," as used in this Agreement, means the net proceeds paid after the sale of the Real Property, after paying all closing costs of sale and advances made to preserve the Real Property (including, but not limited to, costs of Sheriff's foreclosure sale, title company closing costs, title insurance, applicable Realtor®/broker fees, property taxes, and reasonable costs to preserve and protect the Real Property, but not including any attorney or legal fees incurred in the sale).

k. In the event the Real Property is not sold within eighteen (18) months of the final approval of this Agreement, interest shall then begin to accrue on the $700,000.00 due to Fletcher in the amount of six (6) percent per annum.

l. In the event the Real Property is not sold within four (4) years of the final approval of this Agreement, Fletcher shall be entitled to accelerate his assignment and declare the balance of $700,000.00, plus interest and applicable and reasonable attorney fees, due and payable.

2. **Contingent nature of Agreement.** This Agreement is contingent upon approval by (a) a majority of the RSPT plan participants and (b) the judge presiding over the *Solis v. Hutcheson* civil matter (Case No. 12-cv-00236-EJL), Edward J. Lodge. In the event this Agreement is not approved by both parties, it shall be considered null and void.

3. **Filings and Further Assurances.**

a. Bryant shall effect the due filing of financing and continuation statements, shall make all other filings and recordings, shall give all notices, and take such other action as required by law so that this Agreement shall create a valid assignment of proceeds. Fletcher hereby authorizes and empowers Bryant to file any financing or continuation statement and any amendments thereto with respect to the filing or recording of the assignment in accordance with the laws of the State of Idaho, whether pursuant to the Uniform

Commercial Code or any other applicable law, without the signatures of Fletcher whenever permitted by applicable law.

b. Bryant shall at any time and from time to time duly execute and deliver any and all such other and further assurances and documents and take such actions as in the reasonable judgment of Fletcher may be necessary, useful or desirable to obtain or maintain the full benefits of this Agreement.

c. Fletcher shall at any time and from time to time duly execute and deliver any and all such other and further assurances and documents and take such actions as in the reasonable judgment of Bryant may be necessary, useful or desirable to obtain or maintain the full benefits of this Agreement.

d.

4. **Representations and Warranties (Bryant and/or RSPT).**

a. Bryant and RSPT hereby represent, warrant and agree that except for this Agreement it has not assigned, pledged or otherwise granted a security interest in or lien on, and hereby agrees that they will not assign, pledge or otherwise grant a security interest in or lien on the whole or any part of the rights, titles and interests hereby assigned to anyone other than Fletcher, or his successors or assigns.

b. Bryant and RSPT represent and warrant that they possess all required authority to enter into this Agreement, subject only to the contingencies described herein.

5. **Representations and Warranties (Fletcher).**

a. Fletcher hereby represents, warrants and agrees that he has not assigned, pledged or otherwise granted a security interest in or lien on, and hereby agrees that he will not assign, pledge or otherwise grant a security interest in or lien on the whole or any part of the rights, titles and interests in the PCB Loan Documents.

b. Fletcher represents and warrants that he possesses all required authority to enter into this Agreement, subject only to the contingencies described herein.

c. Fletcher specifically represents and warrants the following:

   i. At all times prior to contact by the Department of Labor, RSPT, Bryant or any representatives of the same, Fletcher was unaware of the existence of RSPT or its involvement with Hutcheson or GVH.

   ii. At the time he made his loan to GVH, Fletcher was unaware of the existence of the loan from RSPT to GVH, or pledge of the PCB Loan Documents by GVH to RSPT.

   iii. At the time he made his loan to GVH, Fletcher was told (by Hutcheson) that Hutcheson used his own funds to purchase the PCB Loan Documents. Fletcher was unaware that the funds used by GVH to purchase the PCB Loan Documents had been misappropriated, taken or received from any other party.

    iv.  At the time he made his loan to GVH, Fletcher was unaware that Hutcheson had caused RSPT to loan funds to GVH which were used to purchase the PCB Loan Documents.

    v.  Had Fletcher been aware of the existence of the loan from RSPT to GVH, or pledge of the PCB Loan Documents to RSPT by GVH, he would not have made a loan to GVH.

6. **Miscellaneous Terms.**

    a.  <u>**Prompt Distribution**</u>.  RSPT shall promptly distribute any monies received under this Agreement, after payment of all closing costs from sale of the Real Property, including any amounts due to Fletcher.

    b.  <u>**Governing Law and Jurisdiction**</u>.  This Agreement and the rights and obligations of the parties hereunder shall be governed by, and construed in accordance with, the laws of the State of Idaho and any applicable federal statutes.  The parties hereby consent to the jurisdiction and venue of the courts of the State of Idaho and the United States District Court for the District of Idaho.

    c.  <u>**Effect of Representations and Warranties**</u>.  In the event any of the representations and warranties contained in this Agreement prove false or otherwise untrue, the terms of this Agreement shall be void and unenforceable.

    d.  <u>**Prepayment of Obligation**</u>.  The assignment hereunder shall terminate and be of no further force or effect upon the repayment or prepayment in full of the initial $700,000.00 due to Fletcher (including any interest accrued thereon and attorney fees or other costs incurred) at any time prior to the expiration of four (4) years from the date this Agreement is final.

    e.  <u>**Attorney Fees**</u>.  In any dispute arising out of this Agreement, the prevailing party shall be entitled to reasonable attorney fees from the non-prevailing party.  Determination of the prevailing party in any such dispute shall be made on the basis of the factors enumerated in Rule 54 of the Idaho Rules of Civil Procedure, as the same now exists or may subsequently be amended.  Attorney fees may be awarded pursuant to this paragraph whether litigation actually ensues, whether any litigation settled prior to trial, or whether litigation is pursued through trial (and subsequent appeal).

    f.  <u>**Merger**</u>.  This contract is the entire agreement of the parties and supercedes any previous oral or written agreements.

    g.  <u>**Amendments and/or Modifications**</u>.  No term of this Agreement may be changed, waived, discharged, amended, modified or terminated orally or in any other manner other than by a written agreement signed by all the parties hereto.

    h.  <u>**Counterparts**</u>.  This Agreement may be executed by the parties in one or more counterparts, all of which taken together shall constitute one instrument.  Facsimile or e-mail counterparts may be executed provided that each party executing a facsimile or e-

mail counterpart shall cause the original counterpart to be delivered to the other within seven (7) days after execution.

i.  **Waiver**.  Failure by either party at any time to require performance by the other of any of the provisions hereof shall in no way affect a party's rights hereunder to enforce the same.

*(signature page to follow)*

**IN WITNESS WHEREOF,** the parties have caused this Assignment to be executed and sealed as of the day and year first above written.

RETIREMENT SECURITY PLAN & TRUST

By: Jeanne Bryant
Its: Independent Fiduciary


James W. Fletcher, III

State of Tennessee          )
                            ) ss.
County of _Davidson_        )

On this __ day of ~~November, 2012,~~ _24th   March, 2013_ before me, the undersigned, a Notary Public in and for said State, personally appeared **Jeanne Bryant**, known or identified to me to be the Independent Fiduciary for the Retirement Security Plan & Trust, whose name is subscribed to the within instrument, and she acknowledged to me that, as to the representations and warranties contained in paragraphs 4(a) and 4(b) of the within instrument, she subscribed and swore to the same on its behalf.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed by official seal the day and year in this certificate first above written.


Notary Public for Tennessee
My Commission expires: _May 20, 2013_

State of Virginia          )
                           ) ss.
County of _Rappahannock_   )
           _December_

On this _12_ day of ~~November,~~ 2012, before me, the undersigned, a Notary Public in and for said State, personally appeared **James W. Fletcher**, known or identified to me to be the individual whose name is subscribed to the within instrument, and he acknowledged to me that, as to the representations and warranties contained in paragraphs 5(a) and 5(b) and 5(c) (including all subparts) of the within instrument, he subscribed and swore to the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed by official seal the day and year in this certificate first above written.

Janice D. Carwile, Notary Public
Commonwealth of Virginia at Large
Registration No. 164703
Commission Expires January 31, 2008
                                          _2016_

Notary Public for Virginia
My Commission expires: _1/31/2016_

AGREEMENT AND ASSIGNMENT OF SALE PROCEEDS - Page 6 of 6

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call/Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,500,000.00 | 08-24-2005 | 09-01-2010 | 170011639 | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "*****" has been omitted due to text length limitations.

| | | | |
|---|---|---|---|
| Borrower: | WEST MOUNTAIN GOLF, LLC<br>960 BROADWAY AVE, STE 100<br>BOISE, ID 83706 | Lender: | NORTHWEST BUSINESS BANK<br>1100 OLIVE WAY, SUITE 102<br>SEATTLE, WA 98101<br>(206) 676-8880 |

---

Principal Amount: $3,500,000.00 Date of Note: August 24, 2005

**PROMISE TO PAY.** WEST MOUNTAIN GOLF, LLC ("Borrower") promises to pay to NORTHWEST BUSINESS BANK ("Lender"), or order in lawful money of the United States of America, the principal amount of Three Million Five Hundred Thousand & 00/100 Dollars ($3,500,000.00), together with interest on the unpaid principal balance until paid in full.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one principal payment of $3,500,000.00 plus interest on September 1, 2010. This payment due on September 1, 2010, will be for all principal and all accrued interest not yet paid. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning October 1, 2005, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The initial interest rate on this Note is 6.90% per annum. The interest rate is subject to change on an annual basis beginning September 1, 2006 (the "Interest Rate Change Date") with all subsequent Interest Rate Change Dates to be due on the same day of each year after that. The interest rate is based on the Federal Home Loan Bank of Seattle ("FHLBS") 365 day Short Term Advances (Fixed), rounded up to the nearest one-tenth of one-percent (0.100%) (the "Index"). The new interest rate will be the Index in effect on the Interest Rate Change Date (or on the immediately preceding day that the FHLBS publishes the Index, if the Index is not published on the Interest Rate Change Date), plus a margin of 2.500 percentage points. The Index is currently published on the FHLBS website, www.fhlbsea.com/fhlbsea/main/rates. If the Index is no longer published by FHLBS, the Index shall be a substantially similar index rate selected by Lender.

EXHIBIT
tabbies
A



On the annual adjustment immediately following payoff of the 1st Independent Bank construction loan, the interest rate margin shall be reduced from 2.50 percentage points, to 2.25 percentage points, provided Loan is performing as agreed and is then in a first lien position on the commercial portions of the Member's Lodge and Spa at the Tamarack property.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: AMOUNTS OF PREPAYMENTS. This Note may be prepaid in minimum amount of ONE THOUSAND AND 00/100THS DOLLARS ($1,000.00), or in its entirety, upon Borrower giving Lender written notice at least three (3) business days prior to the date of prepayment, provided such notice is accompanied by a prepayment premium calculated as provided below. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.

**AMOUNT OF PREPAYMENT PREMIUM.** The prepayment premium shall be equal to one percent (1.0%) of the principal balance prepaid, if prepayment is made during months one (1) through twelve (12) of the Loan Term. There shall be no premium due for prepayment after month twelve (12) of the Loan Term. For prepayment purposes, month one of the "Loan Term" shall begin September 1, 2005.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note by 10.000 percentage points. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

> **Payment Default.** Borrower fails to make any payment when due under this Note.

> **Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

> **Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

2

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor of forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured (and no event of default will have occurred) if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

3

**LENDER'S RIGHTS.** Upon default. Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expanses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law

**GOVERNING LAW.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Washington. This Note has been accepted by Lender in the State of Washington.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account.) This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts

**\*\*\*\*\*SPECIAL NOTICE.  ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several

SEA 1467135v2 60456-2
8 29 05

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:
WEST MOUNTAIN GOLF, LLC

By: TAMARACK RESORT, LLC. Manager of WEST MOUNTAIN GOLF, LLC

By: _____
Jean-Pierre Boespflug, CEO of Tamarack Resort, LLC

5

<table>
<tr><td>

RECORDATION REQUESTED BY:
    NORTHWEST BUSINESS BANK
    1100 OLIVE WAY, SUITE 102
    SEATTLE, WA  98101

WHEN RECORDED MAIL TO:
    NORTHWEST BUSINESS BANK
    1100 OLIVE WAY, SUITE 102
    SEATTLE, WA  98101

SEND TAX NOTICES TO:
    NORTHWEST BUSINESS BANK
    1100 OLIVE WAY, SUITE 102
    SEATTLE, WA  98101

</td></tr>
</table>

**Instrument # 300330**
VALLEY COUNTY, CASCADE, IDAHO
2005-09-20          11:07:12   No. of Pages: 16
Recorded for : AMERITITLE
LELAND G. HEINRICH                    Fee: 48.00
Ex-Officio Recorder   Deputy _____
Index to: MORTGAGE

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

## MORTGAGE

THIS MORTGAGE dated August 24, 2005, is made and executed between WEST MOUNTAIN GOLF, LLC, whose address is 960 BROADWAY AVE, SUITE 100, BOISE, ID  83706 (referred to below as "Grantor") and NORTHWEST BUSINESS BANK, whose address is 1100 OLIVE WAY, SUITE 102, SEATTLE, WA  98101 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages, grants, bargains, sells and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in VALLEY County, State of Idaho:

SEE ATTACHED EXHIBIT "A"

The Real Property or its address is commonly known as  2099 WEST MOUNTAIN ROAD, DONNELLY, ID  83615. The Real Property tax identification number is See Exhibit B.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE.  THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

POSSESSION AND MAINTENANCE OF THE PROPERTY.  Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

    Possession and Use.  Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;  (2) use, operate or manage the Property; and  (3)  collect the Rents from the Property.  The following provisions relate to the use of the Property or to other limitations on the Property.

    Duty to Maintain.  Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

    Nuisance, Waste.  Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

    Removal of Improvements.  Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent.  As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

    Lender's Right to Enter.  Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

    Compliance with Governmental Requirements.  Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act.  Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized.  Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

    Duty to Protect.  Grantor agrees neither to abandon or leave unattended the Property.  Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

DUE ON SALE - CONSENT BY LENDER.  Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property.  A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property.  If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor.  However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Idaho law.

TAXES AND LIENS.  The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

    Payment.  Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property.  Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

    Right to Contest.  Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized.  If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien.  In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property.  Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

    Evidence of Payment.  Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

EXHIBIT

B

# MORGAGE
## (Continued)

Notice of Construction. Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

Maintenance of Insurance. Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

Application of Proceeds. Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

Grantor's Report on Insurance. Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage and any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

Title. Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

Defense of Title. Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws. Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Representations and Warranties. All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

Proceedings. If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds. If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

Current Taxes, Fees and Charges. Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

Taxes. The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

Subsequent Taxes. If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property  Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be. at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1)  Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2)  the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing. Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense.  For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable. In Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property.  Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term. obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term. obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding. self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding. In an amount determined by Lender. In its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender. whether existing now or later

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.  In the event of a death, Lender, at its option, may. but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender. and. in doing so. cure any Event of Default.

**Adverse Change.**  A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure

**Right to Cure.**  If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default:  (1)  cures the default within ten (10) days; or  (2)  if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.**  Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option. may exercise any one or more of the following rights and remedies. In addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.**  Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.**  With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code

**Collect Rents.**  Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender.  If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds  Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed  Lender may exercise its rights under this subparagraph either in person. by agent, or through a receiver

**Appoint Receiver.**  Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property. with the

power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors

**ASSOCIATION OF UNIT OWNERS.** The following provisions apply if the Real Property has been submitted to unit ownership law or similar law for the establishment of condominiums or cooperative ownership of the Real Property:

**Power of Attorney.** Grantor grants an irrevocable power of attorney to Lender to vote in Lender's discretion on any matter that may come before the association of unit owners. Lender shall have the right to exercise this power of attorney only after Grantor's default; however, Lender may decline to exercise this power as Lender sees fit.

**Insurance.** The insurance as required above may be carried by the association of unit owners on Grantor's behalf, and the proceeds of such insurance may be paid to the association of unit owners for the purpose of repairing or reconstructing the Property. If not so used by the association, such proceeds shall be paid to Lender.

**Default.** Grantor's failure to perform any of the obligations imposed on Grantor by the declaration submitting the Real Property to unit ownership, by the bylaws of the association of unit owners, or by any rules or regulations thereunder, shall be an event of default under this Mortgage. If Grantor's interest in the Real Property is a leasehold interest and such property has been submitted to unit ownership, any failure by Grantor to perform any of the obligations imposed on Grantor by the lease of the Real Property from its owner, any default under such lease which might result in termination of the lease as it pertains to the Real Property, or any failure of Grantor as a member of an association of unit owners to take any reasonable action within Grantor's power to prevent a default under such lease by the association of unit owners or by any member of the association shall be an Event of Default under this Mortgage.

**DUE ON ENCUMBRANCE.** An exhibit, titled "DUE ON ENCUMBRANCE," is attached to this Mortgage and by this reference is made a part of this Mortgage just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Mortgage.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Mortgage will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Idaho. In all other respects, this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Washington without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Mortgage is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Washington.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be

granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Idaho as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means WEST MOUNTAIN GOLF, LLC and includes all co-signers and co-makers signing the Note.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means WEST MOUNTAIN GOLF, LLC.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means NORTHWEST BUSINESS BANK, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated August 24, 2005, **in the original principal amount of $3,500,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of this Mortgage is September 1, 2010. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

WEST MOUNTAIN GOLF, LLC

TAMARACK RESORT, LLC, Manager of WEST MOUNTAIN GOLF, LLC

By: _____
JEAN PIERRE BOESPFLUG, CEO of TAMARACK
RESORT, LLC

**MORTGAGE**
**(Continued)**

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _IDAHO_ )
 ) SS
COUNTY OF _ADA_ )

On this _6th_ day of _September_, in the year 20 _05_, before me _Janice E Lawson_, a notary public in and for the State of Idaho, personally appeared JEAN-PIERRE BOESPFLUG, CEO of TAMARACK RESORT, LLC, known or identified to me (or proved to me on the oath of _____), to be one of the members or designated agents in the limited liability company of WEST MOUNTAIN GOLF, LLC, and the member or designated agent or one of the members or designated agents who subscribed said limited liability company name to the foregoing instrument, and acknowledged to me that he or she executed the same in said limited liability company name.

By _____ Residing at _Boise ID_ _____

Notary Public in and for State of Idaho

My commission expires _4/27/2010_ _____

# DUE ON ENCUMBRANCE

This DUE ON ENCUMBRANCE is attached to and by this reference is made a part of the Mortgage, dated August 24, 2005, and executed in connection with a loan or other financial accommodations between NORTHWEST BUSINESS BANK and WEST MOUNTAIN GOLF, LLC.

Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon any further encumbrance, without Lender's prior written consent, of all or any part of the Real Property, or any right, title or interest in the Real Property.

An "encumbrance" means the mortgage of, or grant of a security interest in, or grant of a lien on, any part of the Real Property, or any right, title or interest in the Real Property .

THIS DUE ON ENCUMBRANCE IS EXECUTED ON AUGUST 24, 2005.

GRANTOR:

WEST MOUNTAIN GOLF, LLC

TAMARACK RESORT, LLC, Manager of WEST MOUNTAIN GOLF, LLC

By: _____
    JEAN-PIERRE  BOESPFLUG,  CEO  of  TAMARACK
    RESORT, LLC

LASER PRO Lending, Ver 5.27.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - ID/WA  M:\CFI\LPL\G03 FC  TR 629  PR-SIGNED

EXHIBIT A

PARCELS A THRU D:

LEGAL DESCRIPTION
OF
TAMARACK RESORT GOLF COURSE

Four parcels of land located in Sections 5 and 8, Township 15 North, Range 3 East, Boise Meridian, Valley County, Idaho, more particularly described as follows:

Parcel A:
COMMENCING at the north 1/4 corner of said Section 5; thence along the north line of said Section 5,

A.)   S. 89° 27' 05" E., 296.16 feet; thence, departing said section line;

B.)   S. 0° 32' 55" W., 1537.60 feet to the POINT OF BEGINNING; thence,

1.)   N. 86° 22' 47" E., 230.17 feet; thence,

2.)   N. 77° 32' 59" E., 268.40 feet; thence,

3.)   N. 70° 08' 24" E., 202.53 feet; thence,

4.)   S. 69° 26' 41" E., 143.67 feet; thence,

5.)   S. 89° 50' 07" E., 143.20 feet; thence,

6.)   S. 75° 12' 40" E., 63.95 feet; thence,

7.)   S. 61° 52' 53" E., 159.81 feet; thence,

8.)   S. 71° 58' 25" E., 161.98 feet; thence,

9.)   S. 35° 04' 12" E., 136.31 feet; thence,

10.)   S. 14° 07' 03" E., 132.00 feet; thence,

EXHIBIT A

PARCELS A THRU D:

11.)   S.59°40'35"E., 272.48 feet; thence,

12.)   S.25°53'04"W., 276.18 feet; thence,

13.)   S.21°23'20"W., 502.77 feet; thence,

14.)   S.12°45'17"W., 169.07 feet; thence,

15.)   S.20°06'59"W., 663.00 feet; thence,

16.)   S.82°26'28"E., 444.78 feet; thence,

17.)   S.22°35'30"E., 392.70 feet; thence,

18.)   S.0°05'04"E., 163.10 feet; thence,

19.)   S.28°16'52"W., 394.85 feet; thence,

20.)   S.42°47'08"W., 829.09 feet; thence,

21.)   S.58°17'13"W., 291.47 feet; thence,

22.)   S.26°21'09"E., 316.06 feet; thence,

23.)   S.26°15'45"W., 122.10 feet to a point on the south line of said Section 5;
       thence, along said section line,

24.)   S.89°56'25"W., 585.80 feet to a point on the boundary of Tamarack Resort
       Planned Unit Development Phase 1; thence, along said boundary through the
       following courses:

25.)   N.4°01'06"E., 138.16 feet; thence,

26.)   N.16°10'36"E., 140.67 feet; thence,

27.)   N.2°48'29"E., 46.17 feet; thence,

28.)   N.24°29'12"W., 208.21 feet; thence,

EXHIBIT A

PARCELS A THRU D:

29.)   N.2°32'19"E., 47.12 feet; thence,

30.)   N.28°04'26"E., 19.54 feet; thence,

31.)   N.39°02'59"E., 116.48 feet; thence,

32.)   N.43°20'51"E., 730.13 feet; thence,

33.)   N.40°01'59"W., 200.93 feet; thence,

34.)   S.87°54'29"W., 138.39 feet; thence,

35.)   S.70°18'13"W., 313.36 feet; thence,

36.)   S.78°11'10"W., 80.86 feet; thence,

37.)   N.73°02'13"W., 86.12 feet; thence

38.)   N.49°16'48"W., 176.90 feet; thence,

39.)   N.48°31'25"W., 250.98 feet; thence,

40.)   S.43°58'05"W., 125.46 feet to a point on a non-tangent curve; thence,

41.)   Northwesterly along said curve to the left having a radius of 205.00 feet, an arc length of 62.63 feet, through a central angle of 17°30'16", and a chord bearing and distance of N.42°44'47"W., 62.39 feet; thence, tangent from said curve,

42.)   N.51°29'55"W., 245.10 feet to the beginning of a tangent curve; thence,

43.)   Northwesterly along said curve to the left having a radius of 825.00 feet, an arc length of 128.61 feet, through a central angle of 8°55'56", and a chord bearing and distance of N.55°57'53"W., 128.49 feet; thence,

44.)   N.62°52'29"E., 170.63 feet; thence,

45.)   N.06°08'21"W., 363.79 feet; thence,

EXHIBIT A

PARCELS A THRU D:

46.) N.69°30'18"W., 420.12 feet; thence,

47.) N.43°19'35"W., 422.80 feet; thence,

48.) N.13°49'07"W., 432.13 feet; thence,

49.) N.20°18'50"W., 244.95 feet; thence,

50.) N.32°12'25"E., 180.50 feet; thence,

51.) N.53°15'28"E., 176.77 feet; thence

52.) N.69°09'56"E., 378.53 feet; thence,

53.) N.16°20'42"E., 161.54 feet; thence

54.) N.59°21'40"E., 60.00 feet; thence

55.) S.86°01'23"E., 170.22 feet; thence

56.) N.56°08'22"E., 98.34 feet; thence,

57.) N.75°10'48"E., 573.57 feet to the POINT OF BEGINNING.


Parcel B:
COMMENCING at the north 1/4 corner of said Section 8; thence, along the west line of the northwest 1/4 of the northeast 1/4 of said Section 8,

A.) S.0°07'41"W., 1325.76 feet to the C-N 1/16 corner of said Section 8; thence,

B.) S.89°53'46"E., 240.24 feet to the POINT OF BEGINNING; thence,

1.) S.89°53'46"E., 1162.17 feet; thence,

2.) S.15°32'21"E., 288.21 feet; thence,

EXHIBIT A

PARCELS A THRU D:

3.)     S.45°59'25"E., 187.80 feet; thence,

4.)     S.0°00'00"E., 43.69 feet; thence,

5.)     S.51°07'48"W., 302.18 feet; thence,

6.)     S.20°00'03"W., 324.47 feet; thence,

7.)     S.36°46'50"W., 255.08 feet; thence,

8.)     S.9°22'20"W., 253.95 feet; thence,

9.)     S.20°15'09"W., 213.84 feet; thence,

10.)    N.57°05'33"W., 586.31 feet; thence,

11.)    N.83°17'17"W., 328.92 feet; thence,

12.)    S.75°08'04"W., 252.38 feet; thence,

13.)    S.78°09'30"W., 191.69 feet; thence,

14.)    N.36°21'59"W., 141.59 feet; thence,

15.)    N.26°23'49"E., 152.89 feet; thence,

16.)    N.68°16'04"W., 378.45 feet; thence,

17.)    N.11°43'53"W., 84.70 feet; thence,

18.)    N.82°23'28"E., 162.44 feet; thence,

19.)    S.87°47'57"E., 172.45 feet; thence,

20.)    N.69°50'16"E., 135.18 feet; thence,

21.)    N.82°23'28"E., 217.18 feet; thence,

EXHIBIT A

PARCELS A THRU D:

22.)   N. 72° 38' 14" E., 221.45 feet; thence,

23.)   N. 12° 20' 03" E., 279.94 feet; thence,

24.)   N. 6° 26' 52" W., 377.77 feet; thence,

25.)   N. 22° 03' 29" W., 77.55 feet to the POINT OF BEGINNING.


Parcel C:
All that certain lot, piece or parcel of land, situate in Valley County, Idaho, and shown as Lot 11, Block 19, of
Tamarack Resort Planned Unit Development, Phase 1 Village, a plat which is recorded in the office of the
Recorder of Valley County, Idaho.

Parcel D:
All that certain lot, piece or parcel of land, situate in Valley County, Idaho, and shown as Lot 12, Block 19, of
Tamarack Resort Planned Unit Development, Phase 1 Village, a plat which is recorded in the office of the
Recorder of Valley County, Idaho.

EXHIBIT A

PARCELS A THRU D:

Together with an easement for ingress and egress, a 30 foot wide strip of land, 15 feet either side of the following centerline.

COMMENCING at the north 1/4 corner of said Section 5; thence, along the north line of said Section 5,

A.)    S.89°27'05"E., 842.30 feet; thence, departing said section line,

B.)    S.19°38'29"W., 371.11 feet; thence,

C.)    S.71°02'32"E., 54.96 feet to the POINT OF BEGINNING; thence,

1.)    Southwesterly along a curve to the left with a radius of 80.00 feet, an arc length of 68.91 feet, through a central angle of 48°50'21", and a chord bearing and distance of S.0°23'51"W., 66.15 feet; thence, tangent from said curve,

2.)    S.24°01'19"E., 54.34 feet to the beginning of a tangent curve; thence,

3.)    Southeasterly along said curve to the left with a radius of 84.00 feet, an arc length of 31.84 feet, through a central angle of 21°43'14", and a chord bearing and distance of S.34°52'56"E., 31.65 feet; thence,

4.)    Southwesterly along said curve to the right with a radius of 130.00 feet, an arc length of 211.53 feet, through a central angle of 93°13'42", and a chord bearing and distance of S.0°52'18"W., 188.95 feet; thence, tangent from said curve,

5.)    S.47°29'09"W., 163.59 feet to the beginning of a tangent curve; thence,

6.)    Southwesterly along said curve to the left with a radius of 350.00 feet, an arc length of 183.81 feet, through a central angle of 30°05'23", and a chord bearing and distance of S.32°26'28"W., 181.70 feet to the POINT OF TERMINATION.

EXHIBIT A


PARCEL F:
Condominium Units L1-01, L1-02, L1-04, L1-06, L1-07, L1-08, P1-40, P1-41, P1-44, P2-01, and P2-04,
Tamarack Resort Members Lodge Condominium, as shown on the condominium plat for Tamarack Resort
Members Lodge Condominium, appearing in the records of Valley County, Idaho as Instrument No. 291359, and
as defined and described in that Condominium Declaration for Tamarack Resort Members Lodge Condominium,
recorded in the records of Valley County, Idaho as Instrument No. 291363.

STEWART TITLE
GUARANTY COMPANY

EXHIBIT B - TAXES 2004

**PARCELS A AND B:**
(INCLUDES MORE PROPERTY.)

| Tax Parcel No. | Amount | |
|---|---|---|
| RP 15N 03E 050 155A | $ 253.96 | First half paid / Second half due June 20, 2005. |
| RP 15N 03E 051 955A | $ 8,217.12 | First half paid / Second half due June 20, 2005. |
| RP 15N 03E 054 725A | $ 305.46 | First half paid / Second half due June 20, 2005. |
| RP 15N 03E 081 205A | $ 662.84 | First half paid / Second half due June 20, 2005. |
| RP 000 250 000 020A | $ 380.74 | First half paid / Second half due June 20, 2005. |
| RP 000 250 000 030A | $ 356.70 | First half paid / Second half due June 20, 2005. |
| RP 000 250 000 040A | $ 331.26 | First half paid / Second half due June 20, 2005. |
| RP 000 250 000 050A | $ 492.74 | First half paid / Second half due June 20, 2005. |
| RP 000 250 000 060A | $ 225.48 | First half paid / Second half due June 20, 2005. |
| RP 000 250 000 070A | $ 238.28 | Paid in full |
| RP 000 250 000 080A | $ 386.94 | First half paid / Second half due June 20, 2005. |
| RP 000 250 000 090A | $ 314.32 | First half paid / Second half due June 20, 2005. |
| RP 000 250 000 220A | $ 275.72 | Paid in full |
| RP 000 250 000 230A | $ 353.96 | Paid in full |
| RP 000 250 000 270A | $ 297.82 | First half paid / Second half due June 20, 2005. |
| RP 000 250 000 280A | $ 297.52 | First half paid / Second half due June 20, 2005. |
| RP 000 250 000 290A | $ 291.42 | First half paid / Second half due June 20, 2005. |
| RP 000 250 000 300A | $ 290.32 | First half paid / Second half due June 20, 2005. |
| RP 000 250 000 310A | $ 264.36 | First half paid / Second half due June 20, 2005. |
| RP 000 250 000 320A | $ 300.58 | First half paid / Second half due June 20, 2005. |
| RP 000 250 000 330A | $ 307.78 | First half paid / Second half due June 20, 2005. |
| RP 000 250 000 340A | $ 218.96 | First half paid / Second half due June 20, 2005. |

**PARCELS C AND D AND F:**
(INCLUDES MORE PROPERTY.)

| | | |
|---|---|---|
| PP 004 920 190 000A | $ 905.84 | Paid in full |
| RP 004 920 190 000A | $ 6,132.62 | Paid in full |

# EXHIBIT B

## Matthew Christensen

| | |
|---|---|
| **From:** | Thomas J. Angstman |
| **Sent:** | Saturday, July 8, 2017 10:56 AM |
| **To:** | Jeanne Bryant (jbryant@receivermgmt.com); BILL FLETCHER; rmoore@receivermgmt.com |
| **Cc:** | Matthew T. Christensen; Lisa R. Caudill |
| **Subject:** | FW: Fletcher Proposal |

Bill:

Here is the agreement we have been relying upon.  The taxes continue to accrue interest and penalties because they have not been paid.  As you can see, with the publication costs, etc. they are now about $35,000.

Please communicate with me soon as the property will be lost completely if you do not pay the taxes before July 24th and you will be in breach of the accepted proposal below.

Sincerely yours,

T. J. Angstman


T. J. Angstman
Angstman Johnson
3649 Lakeharbor Lane
Boise, Idaho 83703
208-384-8588
208-853-0117 (FAX)

tj@angstman.com
www.angstman.com



NOTICE: This electronic transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender that is protected by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 and 2521 and may be legally privileged.  This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret.  If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited.  If you have received this communication in error, please notify Angstman, Johnson & Associates, PLLC immediately by telephone (208-384-8588) and destroy the original message.  Messages sent to and from us may be monitored.  If you are the intended recipient, you acknowledge that the email address being utilized is secure and that there will not be a waiver of the attorney-client privilege or breach of any duty of confidentiality by the sender's correspondence to that email address.

---

**From:** Thomas J. Angstman
**Sent:** Monday, December 19, 2016 2:47 PM
**To:** Bill Fletcher <fletcherlaw@verizon.net>
**Subject:** RE: Fletcher Proposal

I doubt anybody bids so if they do we will both be happy.

1

T. J. Angstman
Angstman Johnson
3649 Lakeharbor Lane
Boise, Idaho 83703
208-384-8588
208-853-0117 (FAX)

tj@angstman.com
www.angstman.com



NOTICE: This electronic transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender that is protected by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 and 2521 and may be legally privileged.  This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret.  If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited.  If you have received this communication in error, please notify Angstman, Johnson & Associates, PLLC immediately by telephone (208-384-8588) and destroy the original message.  Messages sent to and from us may be monitored.  If you are the intended recipient, you acknowledge that the email address being utilized is secure and that there will not be a waiver of the attorney-client privilege or breach of any duty of confidentiality by the sender's correspondence to that email address.

**From:** Bill Fletcher [mailto:fletcherlaw@verizon.net]
**Sent:** Monday, December 19, 2016 2:18 PM
**To:** Thomas J. Angstman <TJ@angstman.com>
**Subject:** Re: Fletcher Proposal


SOUNDS GOOD AND I AND DON'T HAVE TO COME WHICH IS EVEN BETTER- I AM PROTECTED-GOOD LUCK HOPE SOMEONE BIDS 5 MILLION FOR ALL OF OUR SAKES


On 12/19/2016 2:42 PM, Thomas J. Angstman wrote:

> We will bid up to 1.2 MM.  If something at it above that comes in, we will take it. If not, we will bid the whole amount in and set up to sell asap.
>
> TJ
>
>
>
> Sent from my Verizon, Samsung Galaxy smartphone
>
>
> -------- Original message --------
> From: "Thomas J. Angstman" <TJ@angstman.com>
> Date: 12/19/16 12:36 PM (GMT-07:00)
> To: Bill Fletcher <fletcherlaw@verizon.net>, "Thomas J. Angstman" <TJ@angstman.com>
> Subject: RE: Fletcher Proposal
>
> I take your other email as acceptance of these terms.

Thank you Bill.

Please feel better.

Best,

TJ


Sent from my Verizon, Samsung Galaxy smartphone


-------- Original message --------
From: Bill Fletcher <fletcherlaw@verizon.net>
Date: 12/19/16 11:50 AM (GMT-07:00)
To: "Thomas J. Angstman" <TJ@angstman.com>
Subject: Re: Fletcher Proposal


HOPE IT SELLS-STILL SICK


On 12/19/2016 11:56 AM, Thomas J. Angstman wrote:

> I am sorry to hear that.  I hope you feel better today.

> I can get RSPT to split the difference with you.  This would assume $1.2MM sales price.

> Was: 625 Fletcher/575 RSPT
> Your proposal:  742 Fletcher/458 RSPT

> Difference is $117 + for Fletcher

> New proposal 684 Fletcher/ 516 RSPT

> RSPT would recover the first $325k, Fletcher the next $675 then the balance pari passu to reach the totals.  If the price goes above $1.2MM you would share 50/50 until you receive 100% of your original deal, with the stated interest.  Then you would no longer share.

> Bid at the auction will be $1.2MM unless there are no bids that high, then RSPT will bid up to $5MM.  If the property is acquired at the sale RSPT has the right to sell for less than $1.2MM but you will be given 1st right of refusal to pay RSPT the total it would receive from any other offer.  There is no first right of refusal for sales of $1.2MM or higher.  Fletcher agrees to pay property taxes of approximately $30k before tax deed auction.

> The deal would be permanent.

> Thank you.  You are a tough negotiator.

> Regards,

T. J. Angstman
Angstman Johnson
3649 Lakeharbor Lane
Boise, Idaho 83703
208-384-8588
208-853-0117 (FAX)

tj@angstman.com
www.angstman.com



NOTICE: This electronic transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender that is protected by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 and 2521 and may be legally privileged.  This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret.  If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited.  If you have received this communication in error, please notify Angstman, Johnson & Associates, PLLC immediately by telephone (208-384-8588) and destroy the original message.  Messages sent to and from us may be monitored.  If you are the intended recipient, you acknowledge that the email address being utilized is secure and that there will not be a waiver of the attorney-client privilege or breach of any duty of confidentiality by the sender's correspondence to that email address.

**From:** Bill Fletcher [mailto:fletcherlaw@verizon.net]
**Sent:** Friday, December 16, 2016 5:58 PM
**To:** Thomas J. Angstman <TJ@angstman.com>
**Subject:** Re: Fletcher Proposal

Tried to call been in er all day call 540 987-8511 tomorrow at 10am est  best bill

Sent from my iPhone

On Dec 16, 2016, at 3:52 PM, Thomas J. Angstman <TJ@angstman.com> wrote:

> Bill,
>
> I am prepared to talk to you if you are ready.  I think we can work something out so that the 1..2MM deal, if it materializes, makes sense.  We can't move the sale so let's get this done by Monday because I am taking off after that.
>
> Thank you,
>
> TJ
>
> T. J. Angstman
> Angstman Johnson
> 3649 Lakeharbor Lane
> Boise, Idaho 83703
> 208-384-8588
> 208-853-0117 (FAX)

tj@angstman.com
www.angstman.com

<image007.jpg><image008.png>

NOTICE: This electronic transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender that is protected by the Electronic Communications Privacy Act, 18 U.S..C. §§ 2510 and 2521 and may be legally privileged.  This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret.  If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited.  If you have received this communication in error, please notify Angstman, Johnson & Associates, PLLC immediately by telephone (208-384-8588) and destroy the original message.  Messages sent to and from us may be monitored.  If you are the intended recipient, you acknowledge that the email address being utilized is secure and that there will not be a waiver of the attorney-client privilege or breach of any duty of confidentiality by the sender's correspondence to that email address.

---

**From:** Bill Fletcher [mailto:fletcherlaw@verizon.net]
**Sent:** Thursday, December 15, 2016 1:59 PM
**To:** Thomas J. Angstman <TJ@angstman.com>
**Subject:** Re: Fletcher Proposal


WOULD LIKE THE ITEMIZED STATEMENT IF POSSIBLE


On 12/15/2016 3:34 PM, Thomas J. Angstman wrote:

> Except advances for taxes and property preservation. That's 325.
>
>
>
> Sent from my Verizon, Samsung Galaxy smartphone
>
>
> -------- Original message --------
> From: Bill Fletcher <fletcherlaw@verizon.net>
> Date: 12/15/16 1:22 PM (GMT-07:00)
> To: "Thomas J. Angstman" <TJ@angstman.com>
> Subject: Re: Fletcher Proposal
>
>
> YOU MIGHT WANT TO LOOK AT LAST AGREEMENT-PAGE 2 (K)700 K AT 6% INTEREST FROM 9/29/14 SO

OWE ME ABOUT $784,000,00 AND FROM MY READING
THAT COMES BEFORE RSPT GET ANYTHING

On 12/15/2016 2:53 PM, Thomas J. Angstman wrote:

> The call is being moved up to today at
> 4:30 my time.  I will follow up
> tomorrow.  This is the best time for
> RSPT to have the auction, when all the
> homeowners are there on site.  They
> can pool their funds and solve the
> problem for us by purchasing the
> property.
>
> TJ
>
> T. J. Angstman
> Angstman Johnson
> 3649 Lakeharbor Lane
> Boise, Idaho 83703
> 208-384-8588
> 208-853-0117 (FAX)
>
> tj@angstman.com
> www.angstman..com
>
> <image005.jpg><image006.png>
>
> NOTICE: This electronic transmission (and/or the
> documents accompanying it) may contain confidential
> information belonging to the sender that is protected
> by the Electronic Communications Privacy Act, 18
> U.S.C. §§ 2510 and 2521 and may be legally
> privileged.  This message (and any associated files) is
> intended only for the use of the individual or entity to
> which it is addressed and may contain information that
> is confidential, subject to copyright or constitutes a
> trade secret.  If you are not the intended recipient you
> are hereby notified that any dissemination, copying or
> distribution of this message, or files associated with
> this message, is strictly prohibited.  If you have
> received this communication in error, please notify
> Angstman, Johnson & Associates, PLLC immediately by
> telephone (208-384-8588) and destroy the original
> message.  Messages sent to and from us may be
> monitored.  If you are the intended recipient, you
> acknowledge that the email address being utilized is
> secure and that there will not be a waiver of the
> attorney-client privilege or breach of any duty of
> confidentiality by the sender's correspondence to that
> email address.

**From:** Bill Fletcher
[mailto:fletcherlaw@verizon.net]
**Sent:** Thursday, December 15, 2016
12:49 PM
**To:** Thomas J. Angstman

<TJ@angstman.com>
**Subject:** Re: Fletcher Proposal


I DID BUT PEOPLE AREN'T DOING WHAT
THEY SAID-I IMAGINE YOU HAVE SOME
EXPERIENCE WITH THAT-IF i CAN WAIT
TO PAY TILL JAN 29TH SHOULD HAVE
ALL CASH


On 12/15/2016 2:36 PM, Thomas J.
Angstman wrote:

> I know but I scheduled
> it after you said you
> would just bid at the
> sale and had the
> money.  It cost us a lot
> of time and money to
> schedule this.  RSPT
> wants to be done with
> this – I will convey your
> request to the client.
>
> Thank you,
>
> T. J.. Angstman
> Angstman Johnson
> 3649 Lakeharbor Lane
> Boise, Idaho 83703
> 208-384-8588
> 208-853-0117 (FAX)
>
> tj@angstman.com
> www.angstman.com
>
> <image005.jpg><image
> 006.png>
>
> NOTICE: This electronic
> transmission (and/or the
> documents accompanying it)
> may contain confidential
> information belonging to the
> sender that is protected by the
> Electronic Communications
> Privacy Act, 18 U.S.C. §§ 2510
> and 2521 and may be legally
> privileged.  This message (and
> any associated files) is intended
> only for the use of the individual
> or entity to which it is addressed
> and may contain information
> that is confidential, subject to
> copyright or constitutes a trade
> secret.  If you are not the
> intended recipient you are